Good morning. May it please the court, my name is Thomas Saenz and I represent the plaintiff appellant in this case Aldo De Leon. As you know Mr. De Leon is a young immigrant to the United States who has received work authorization through being granted deferred action for childhood arrivals. About three years ago he was pursuing his American dream by attending North Carolina State University and seeking a degree in chemical engineering. During his period of time as a he was recruited by the defendant Exxon Mobil to apply for an internship, a limited term internship of about three months in duration. He did that. Were there requirements to be a part of that internship? What was the internship for? What group of people? It was for students who were engineering students I believe your honor. It was a general application though location but the important point is I believe there were locations throughout the country for which the internship that he initially applied for could be served. Sir let me ask you this. Exxon hired him and at the time they knew he was not an American citizen and then they rescinded his employment when they found out that he only had a temporary work authorization. How could you possibly accuse the company of discriminating on the basis of citizenship? Your honor this is the crux of the case as you know. This is a circumstance where discrimination on a prohibited basis is being practiced against a subgroup of that entire protected class. It happens in other cases has been recognized by the U.S. Supreme Court as that the fact that you hire others within the protected class does not mean you are not potentially violating a prohibition on discrimination against that class. In this case it would be alienage at the basis for discrimination and though Exxon Mobil does hire some who are not U.S. citizens we still contend and believe the briefing the complaint demonstrated sufficient to get by the motion to dismiss granted by the district court that this was discrimination on the basis of non-citizenship even though the company did hire other non-citizens. So counsel just to talk about the Bostock case I think I pronounced it right but the you know to follow up on Judge Floyd's question you know the basis of the decision there seems to be the connection between sexual orientation and transgender status on the one hand and sex on the other and it's pretty clear to me that in that opinion and the way the statute's written that's gotta that can't be as a result of a kind of factual consequence like a disparate impact situation it's got to be intentional there's got to be a tent element to it and the way the majority opinion is written you know with several of the hypotheticals it seems to focus on for example the an individual who has an affection towards men and then to decide whether that's discriminatory you need more information to because if if it's a man you need to that information to determine whether there's actual discrimination or not and that there's a couple other examples that fall that way here it doesn't seem like that's necessary the knowledge about the Mr. De Leon was within the classification it may be true and you're certainly right that factually everyone who has that will be a non-citizen but you don't need that to complete the picture and that seems to be the way Bostock ties those two issues together is sexual orientation and sex and just don't see how we have that here other than in a disparate impact sort of sense can you address that maybe I'm reading that wrong but and I get there's parts of Bostock that are I mean you know I don't get how that every part of it matches up but that seems to be the fundamental linkage of those two issues but what Bostock tells us is that you have to look at the description of why the person was discriminated the person was gay lesbian transgender and then compare using a but-for analysis as the court did in Bostock to determine if a similar discrimination if you will would apply if the person were a different sex sex being the prohibited basis of discrimination I would only respond to your question by saying in this case it is possible that Exxon Mobil could come forward with evidence to suggest it does assess every person citizen and non-citizen for their ability to accept and complete a long-term employment that seems to be what be what is behind the determination that you must provide quote-unquote permanent work authorization and interest in folks who can be employed long-term that is an interest that would apply to both citizens and non-citizens alike so as in Bostock you've got to ask yes this is a non-citizen and it was a result of not being a citizen does not have permanent work authorization would this company treat a citizen with a similar inability to commit permanently to long-term employment but similar treatment yeah and I get that point maybe they would and there's some insinuation that that yeah in the briefing that that may be the case but but even before you get there don't you have to connect citizenship more to work status along the lines that is done with you know sexual orientation and transgender status in Bostock it just those things you know seem to be factually connected here and not intentionally connected the way they are in the Bostock opinion but I believe that understanding the law on work authorization would indicate that they are directly and permanently connected that being that all citizens have permanent work authorization it will not change well but I don't know if actually that's true but I don't that I mean those I want to you know beat a dead horse too much but I mean Bostock folks that that's that's a lot like a disparate impact theory that sounds to me like factually everyone who has the work temporary work status will be a non-citizen that that may be factually true probably I mean I think it is actually true but that doesn't mean that necessarily I don't know that Bostock says that's what answers the question there's got to be a connection of needing to know the citizenship in order to determine whether they are classifying on a prohibited basis and that's what you were characterizing as disparate impact I would not characterize that way for two reasons one it's 100 percent under the law okay that a citizen every citizen has permanent work authorization now that doesn't mean that there might not be other barriers right to long-term employment for those citizens right every non-citizen by contrast does not have permanent work authorization even a lawful permanent resident does not have permanent work authorization if they were to violate a condition of being a lawful permanent resident including for example failing to re-register after 10 years and therefore being unable to carry proof that there are in fact a lawful permanent resident so as a matter of law it is 100 on both sides second I would assert it's really a tautology issue right why are you a tautology issue are you defining the class that's being discriminated in a way that simply means being a non-citizen and that's what we would argue here you can't in essence assume the outcome by using different words to describe a non-citizen class but that's what you're doing when you describe the class as those without permanent work authorization because by itself that means non-citizen so it's simply a different way of saying we are discriminating against all non-citizens now in this case they have exceptions those they call protected persons under IRCA and that includes lawful permanent residents asylees and refugees all three of those classes also have non-permanent as I've explained work authorization so they do it's not permanent it just can be revoked right that that's not to say it's not permanent right I mean you know listen a U.S. citizen in a sense doesn't have permanent work authorization either right because they could go out and murder a bunch of people and be executed right that would mean they couldn't work anymore right they could be put in prison right but but those are still permanent work authorizations they just are subject to revocation actually your honor for lawful there is still a requirement every 10 years if you are a lawful permanent resident that you re-register if you fail to do that you can no longer comply with a rule that you have with you at all times proof of your status as a lawful permanent resident that then potentially leads to revocation as you said of work authorization but with respect to asylees and refugees there's a frequent requirement two years to go in and re-register and if you also seek work authorization my understanding is your work authorization as an asylee would have a expert an expiration date it would then be reissued when you re-register after two years as required with a new expiration date but so that's that's that's that's nothing that Exxon has anything to do with that's correct why in the world would they buy into a suit like this knowing on the front end that he was a non-non-citizen your honor again this is a question of whether they're discriminating on the basis of non-citizenship within a subclass of all non-citizens it's the same as Connecticut decided by the Supreme Court the fact that you in the end are hiring other folks from a protected class does not answer the question whether an individual emphasize in Bostock that it is an individual question that an individual is facing discrimination on the basis of a prohibited basis such as alienage or non-citizenship here so the fact that they do hire other non-citizens does not answer the question still under section 1981 they are prohibited from discriminating against any individual including Mr. Deleon on the basis of non-citizenship in this case because it was premised on his not having permanent work authorization which is another way of defining and describing non-citizens as compared to citizens they were in essence discriminating as an individual as they also would against others who hold DACA so I read Bostock is requiring two different things one is a but-for cause and Bostock seems to expand that a fair bit and that was the issue that was at play there primarily but the second issue is Judge Quattlebaum references intentionality and that both of those things are required right this is the difference between disparate impact and intentional discrimination assume for a minute that I thought or you know hypothetically that alienage here is a but-for cause help just I'm just trying to really understand the argument for how Exxon is intentionally discriminating on account of alienage like help me understand how you meet that part I mean you seem to be focusing on the the but-for-cause side and I think there are arguments both ways there but what I can't really quite get my head around is the intentionality side so intentionality is shown by the fact that this is a categorical exclusion there's no application of different criteria looking into individual cases it's a categorical exclusion that exclusion is defined as we've said by whether you have permanent work authorization or not that determination of permanent work authorization is entirely tied 100% coincident with whether one is a citizen or a non-citizen so Bostock also tells us it doesn't really so but then go back to the to the pregnancy case right from the from the 1970s before we enact the statute and the Supreme Court there says yes 100% of pregnant people are women but discrimination on pregnancy grounds is not on account of sex or on the basis of sex right in essence saying it was a but-for cause of your discrimination but it's not intentional because what the employer doing is discriminating not based on your gender but instead on your status as being pregnant and it you know the statute overrules that with respect to pregnancy but the principle remains. If that had not been overruled by statute I think Bostock would have severely undercut and does severely undercut that analysis because again in Bostock the Supreme Court tells us it doesn't matter what the employer characterizes its discrimination as or how people in general would characterize discrimination you've got to look at is there a distinction that makes a difference between whether you're a non-citizen or citizen or in that case so your argument is that either you agree that if we don't view the statute as overruling the principle instead just an update of the statute and that Bostock doesn't overrule it that it would control here and you got a problem on intention. No I do think Bostock would overrule it but that's what I'm saying. And if it doesn't I'm saying hypothetically if I think Bostock does not overrule a case that it doesn't cite or otherwise discuss then help me understand how if it applies and we'll give you a few minutes to answer but if that case continues to apply help me understand why it's not your case exactly and rejecting it given that it I mean it's 100% right I mean it's the same basic idea. I think it's more than Bostock that undercuts the reasoning of that rather old case. But assuming the case continues to control can you distinguish it or do you depend solely on the idea that it's been implicitly overruled in some way? Yes every case since then the court has arrived at more general descriptions to apply it from one sex to the other so instead of in the subsequent case are you capable of being getting pregnant or not it's are you fertile so then that's applicable to men as well as women that's Johnson controls. So in this the same here what is the general principle are you available without any barrier for long-term employment that's applicable to both citizens and non-citizens. The question in this case is does Exxon apply that to both citizens and non-citizens at this pleading stage what we have put forward based on what we are aware of is that it does not apply to citizens as well. Now we got past this stage and evidence came forward that in fact they do assess even citizens ability to whether there are any barriers to long-term employment you mentioned some of them are they potentially indictable etc. Thank you thank you counsel you got some time on the fly oh I'm sorry Judge Guadalbana. I'm sorry to go then I'm actually going to bring up a different topic so I apologize to my colleagues but you know the first step that is briefed is whether the implied cause of action under 1981 exists here and I've read the briefs and I'm not going to go into this in detail but is it does the Bivens analysis the analysis that we look to in to see whether to apply a Bivens case you know is an extension are there special factors is that the same analysis that we would apply here to determine whether there is a cause of action? I don't think so your honor but let me first say this was not fully briefed and we would welcome further briefing if that's where the court chooses to go but I would say it's compass you know sites to the one of the the Bivens or one of the case I can't maybe yeah so but but the reason I think it's not is that we have all of these cases up to Bostock that describe what does it mean to prohibit discrimination on a basis we know this court decided in the 1990s that private discrimination on the basis of alienage is prohibited by section 1981 what Bostock tells us is even though when title 7 was enacted in the 1960s we may not have anticipated this it was there when you prohibit discrimination on the basis of sex that it necessarily includes prohibiting discrimination on the basis of sexual orientation or gender identity essentially what the court said so this is not an extension this is we decided maybe let me cut you off I'm not debating right now whether it's in whether it is or is not an extension I'm at that but that's the Bivens questions right number one is an extension number two are there special factors you know suggesting we shouldn't do it my question is not whether your question is that the analysis we look to uh I think it's debatable your honor I think that may be specific to Bivens that may be specific to Bivens but I would not say there's any clear answer to whether that's the analysis that would be applied you have an alternative suggestion for how we'd look at it again my assertion would be that even if you looked at those criteria this is not an extension because it was embedded in the initial determination of private discrimination against alias prohibited okay Mr. Lynn we have a ear from you good morning may it please the court Albert Lynn on behalf of Exxon Mobil I think perhaps the clearest uh illustration of why plaintiff's theory is wrong is that it would make per se unlawful it would make it per se unlawful for employers to have a need or have a visa that is something no one disputes is permissible including the department of justice is that really right because I first of all even if it's even if that's true like like that's a consequence but if that's what the law requires that's what the law requires but do we think that if there was a law so if if congress passed a separate law that says to um that that would similarly fall into this boat I wouldn't understand your colleague to suggest that that would apply here because that specific would govern no no your honor I think I think it I think if we take a step back and consider what their theory is right I mean he said a couple times that it's it's this issue of a hundred percent impact we plaintiffs his contention is that a policy is unlawfully discriminatory on its face right if by its terms it differentiates on the basis of a trait unique to some non-citizens and only non-citizens and so here the issue is temporary work authorization that's the unique trait that applies only to some non-citizens but I think visa needing to have a visa is also such a trait so I think that's why that that illustration is helpful here and and ultimately uh yours I think the flaw in plaintiffs reasoning is that he's trying to prove facial discrimination through disparate effect alone and your honors have mentioned disparate effect a couple times today and and I think that's really the problem here in their reply they make clear that their one and only claim in this case is that the policy is discriminatory against non-citizens um on its face which if true would make the policy per se unlawful but the mere fact that a policy has a certain effect on non-citizens which is what he has emphasized here and in his briefs doesn't make that policy discriminatory on its face right those are different questions whether something is facially discriminatory depends on what the policy says and whether it identifies as a protected basis uh you know a trait identifies as the differentiating principle a trait that is protected that is a different question but but so is yeah but those talk the the express basis for the discrimination was not sex it was sexual orientation or gender identity and so you know we gotta we gotta deal with that I mean there was a you know a description that was different than the you know on the basis of sex just like here there's a description that's different than on the basis of alien alienage so does bostock take away the argument that look they didn't write into the policy citizenship so two answers your honor to your second question no I don't think it does I think have not I mean I mean I mean the policy in bostock was not expressly on the basis of sex they looked at the court looked at it and said you can't separate the two basically yes your honor and and that's my second answer which is what was going on in bostock but I think just to make clear I don't think it's a a fair or correct reading of bostock to say that is that it is implicitly eliminated all of the cases that address how you deal with facially neutral policies there are still such things as facially neutral policies and for that there has to be more right one thing that you could allege is a disparate effect but in 1981 there has to be intentional discrimination so you also have to allege facts that are true would prove a discriminatory purpose so that's my first answer I don't think bostock eliminates all of the cases you know over the years that deal with facially neutral policy I think that is true those still so but does it I mean I think that's probably not a lot of disagreement on that generally but it does it eliminate it for um policies that um classify on a basis that is you know inescapably and intentionally connected to a hybrid prohibitive basis I think I would use similar language to what you just said your honor I think I think the issue in bostock and you asked my friend that question is that the traits that were at issue there can't really be described or explained or analyzed without reference to the protected basis right and so there's that whole discussion in there about whether you would say in kind of changing one the same sex or no I'm sorry attracted to a man right you have to sort of describe it that way this is different your honor and you you ask that can you talk to me just a second about the the level of generality of the description right because I at least rhetorically you could change bostock by saying um my category is not people who like men which then requires knowing whether you're a man or a woman to know whether you're going to be affected by the policy but instead the policy is homosexuality right and so if you describe it at the height like a slightly different level of generality the question becomes well if I'm discriminating against anyone who's homosexual it doesn't matter whether they're a man or a woman I'm discriminating on the basis of the description and I take bostock to tell us we can't be this broad we got to go to the conduct or the more specific and I'm wondering how that applies here because your colleague wants to suggest instead of the specific that is like work authorization it's more general like do you have a long-term interest in like continued employment with us and is that the same move am I thinking about that the same way the long-term interest in employment is is the men is is the equivalent of um lacking work authorization I understand your question your honor I I think the analysis of what was happening in bostock is is to be candid I think a difficult one and that was obviously the dispute between the the majority and the dissent um I think the way you understand bostock is that that again I think it comes back to the idea that you can't describe that particular trait that was at issue without reference to the protected trait there but I think more importantly I don't think any of that is relevant here and I think that's because if you look at the actual policy that's at issue that's pleaded and that's a paragraph 27 it's not simply the statement you have to have permanent or indefinite right to work in the United States although that is the shorthand it then goes on and there's a parentheses ie and explains specifically what we mean by that shorthand and what we mean by that shorthand is and it says you are a protected individual under 8 usc 1324 b and that lists a number of specific individuals citizens is one of them asylees is another refugees is another permanent residence is another so my friend has talked a lot today about whether what's really behind the policy is not wanting to hire people who have a practical long-term inability to work and that's wrong for two reasons the first is we're not talking we don't look at what's really behind the policy in his reply again he's expressly disavowed the idea that he's challenging a facially neutral policy right and that you go into the mcdonald douglas analysis and kind of figure out what you know whether there's a secret intent he says at pages five and six that's not what he's claiming he's claiming that this is discriminatory on its face so the first problem is you don't think about or look at or explore what the you know whether there's a pretext but the second is i think when you look at the policy as it's pleaded right where the motion is dismissed so it's his words the policy not doesn't only say permanent or indefinite right to work it then defines that specifically as you are a protected individual under 8 usc 1324 b so your honor to your boss question i think that's a complicated one i think it there was unique to the idea that to describe the trade at issue you have to reference the protected basis but i don't think that we come anywhere close to that complicating issue here let me change course does erica require immigrant workers to exhaust their alien discrimination claims through its administrative process or is that streamlined process merely optional your to be honest i don't know have an answer to that question however i i don't think it would apply here to mr de leon because he's not a protected individual under 8 usc 1324 b so he's not um he's not he doesn't he doesn't he's not covered by that statute which is really sort of the point so he's here he can pursue his claims under 1981 in a different manner yeah yes assuming for the setting aside our alternative argument that that judge a recipient or someone who's not lawfully admitted even has an implied right under section 1981 but that is an alternative argument that we don't think you need to reach i think you can assume for the sake of argument that he does have an implied private right of action and you can simply find that the limited claim that he has brought here which is the allegation that this policy explicitly discriminates on the basis of citizenship on its face and you can find that that is not true the the basis for the discrimination here is whether you are protected individual under 8 usc 1324 b and so if you you know have kind of picture a decision tree right where there's a branch that goes one way and a branch that goes the other way you know and there's that node at the top what is the differentiating factor that that puts you down one side versus the other that differentiating factor is not citizenship if it were one side would have all citizens and the other side would have all non-citizens but what happens here is you have citizens as well as a whole bunch of other people non-citizens you know refugees asylees people with permanent residency and on the other side yes i mean for sure um i mean i think that's been kind of conceded actually from the get-go that there there are plenty of non-citizens the debt sign appears to hire and the facts here that they hired that this point of you know suggests that i don't see how that lets us not grapple with the issue that judge richardson raised which is because bostock comes in and it says even if the policy has a is based on something that's not the specific protected characteristic you know you have to you can do it still can be prohibited if there's some connection between a you know characteristic or a basis that is not you know explicitly the protected trade so i don't see how you know your definition which goes in the protected class does anything to keep us from trying to figure out what we have to do with bostock and whether to engage in that more specific analysis versus that more general analysis if i'm if i've if we were to if we were to change the analogy and and use you know sexual orientation and transgender you still would have the same situation i mean it's not facially it's not facially discriminatory except for the connection of that with sex um your honor i don't think we're really that far apart i i think the bostock methodology does apply i think the question is is what judge richardson posed which is how do you define these traits right that's kind of a weird way to end up resolving it by picking a specific trait versus the more general way you describe it right on the other hand that's how you know the the port they are linked sex and sexual orientation yes but but i think i think the way that you know this court can resolve that in this particular case is i mean again i think it it it's a couple things i think the the way you understand bostock is you you have this potential ambiguity disagreement right about how you how you might define it what level of generality because it is a trait that is related to intertwined with right can't be described or understood without reference to the protected trait i just don't think that's true here i think what you have and i think frankly i think urca illustrates that well urcas talks about certain non-citizens and then distinguishes amongst them right on the basis of their immigration status or their work status and it says you know the protected the protected non-citizens here are permanent residents refugees asylees and then there are some that are not protected which include people who need visas as well as uh individuals like mr de leon and i i you don't i can't imagine a way where you would describe that or have to describe that based on their non-citizenship it is a separate trait uh though it is one that is you know only held by non-citizens it is one that can be distinguished distinctly in a very easy way and i think the facts here and judge point referred to that the facts here show that right we when we i'm sorry your honor i was just going to say when we all we knew about mr de leon was that he was a citizen of mexico he was offered the internship it's when we found found out more as the application process went forward about his specific status and work authorization whether he fell under 8 usc 1324 b that distinct trait is how we is why the the internship was revoked so i think judge are we talking about in that context i'm gonna go ahead when i think about bostock and help me understand if what i've thinking is right and i want you to disagree if you if you do this is not a leading question this is a but i think bostock is having these two pieces right one is but for cause and one is intentionality and it seems easier here to talk about alienage as the but for cause of lacking work authorization right given bostock's broad language that seems to to be an easier fit than intentionality is that the right way to think about bostock and is the right way to think about this case um is that even if it's you know technically a but for cause of lacking work authorization that being alienage um it's there's no intentionality uh as bostock found it the sort of example that judge quattlebaum gave earlier about showing up with your spouse that is a man and unless you know whether the employee is a man or a woman you don't know so that requires intentionality is that the way of thinking about it or am i missing something in that analysis you know that's not how i read bostock but but i think we end up getting to this so help me understand how how how you read it so how i read bostock is that you what was happening there was sort of two traits at issue there's gender or sex right which is the the um the actual protected trait and then there's you know whether it's homosexuality or transgenderism is the other trait and then the question is if in step one you have to kind of figure out how you define that second trait and then step two is you change only one of those traits and you figure out whether that change would be outcome determinative so there i start that most talk pretty much that that that change one trait doesn't it says it and then later seems to say well but that's it seems to say that and then almost reject it later in the opinion no you know i don't think that's right so there is a section where it is addressing it says the the other side argues i think what it says is that it it claims that the company is accusing it's too strong of a word but the company is contending right that the analysis adopted ultimately adopted by justice gorsuch was actually changing two traits and i think what justice says is no no no i am only changing one trait and the one trait that i'm changing is the sex of the individual what i'm holding constant is just to use homosexuality as the example that the individual is attracted to men right so a man attracted to a man versus a woman attracted to a man which you know is that outcome determinative versus if you held sex constant a man attracted to a man versus a man attracted to a woman right and so he he kind of changes those things and figures out whether that changes outcome determinative if you do that here the the issue is you know you have a non-citizen that's one trait who is not a protected individual under 1324b or as we also put it doesn't have a permanent or indefinite right to work then you have a citizen who is not a protected individual under 1324b doesn't have a permanent or indefinite right to work but you have to hold that constant does that change in citizenship result in differential treatment and the answer to that is no it doesn't and why does it matter that it that your comparators are null set right i mean the the citizen that's not 1324b doesn't exist right that's right so so why why doesn't that change the analysis i'm totally with you but i i just want to make sure i understand your your position on the fact that it's a null set why is it that that doesn't matter i think there's two ways to look at that one is sort of at a kind of a a theoretical or logical level which is there is then no disparate treatment there's no other individual that is being treated differently and in the cases that we cite the sex plus cases the eighth circuit and the tenth circuit and the sixth circuit have all said that they've said when you have that null set you can't you can't establish that logical requirement of discrimination or disparate treatment because there is no one who is being treated differently from you i think we think about in the factual way here that null set is not being treated differently because that null set person can't be hired doesn't exist so it is practically the same treatment so i think that's there's sort of two ways to think about why that that null set issue is a problem just just hopefully this is short do you back to the last question i asked your colleague do you is it exxon's position that the way we address the uh so my time has expired if i answer please um your your honor when you were asking i think the short answer is basically yes you're you had alluded to the fact that comcast which addresses 1981 refers to ziggler which is the bivens case and it talks about how you you know you shouldn't we should be cautious about implied rights of action so i think the short answer is yes i think more broadly the court has said in a number of instances that the days of the implied right of action are different from those today and that as a general principle there should be caution exercise and extending implied rights beyond what the supreme court has done thank you thank you we've got some time on rebuttal thank you i first want to point out that no matter how you describe the discrimination here either the ways proffered by exxon it is inextricably connected with alienage and immigration first of all the whole notion of work authorization did not exist prior to irka prior to irka there was no such thing it is entirely tied to alienage and immigration reform and control act and the second description they use of protected persons comes directly from irka it is entirely a creature once again of immigration therefore inextricably tied to alienage so as far as the connection between the protected category alienage and what's going on here it is inextricable in the context of employment there's really no way to figure out what exxon's interest is in this issue except by then going to the more general description they're looking for folks who have the ability without barrier to commit to long-term employment that is a description that applies both to citizens and non-citizens and that's the appropriate way of approaching the question if you end up with a null set as was discussed recently and the comparison you're making doesn't exist among those who don't have the characteristic protected that means you probably have a tautology problem you're in essence we have that we have that issue come up all the time right we see in in traditional employment cases all the time somebody shows up and is attempting to prove discrimination and they lack a comparator and if you lack a comparator that was treated differently right that null set generally means you lose not 100 percent of the time but it generally means you lose generally your honor i'd say when that occurs you can come up with a more general description that could apply to the other but the null set is not really null but it's so small because it's such a small issue that it doesn't really rise to the level of being discrimination that's not true here here there's only a null set i don't i don't understand that so if i could the null set exists here solely because what's being used to describe the issue is entirely tied up with alienage as i said the whole notion of work authorization did not exist other than in the context of alienage so their first description do you have permanent work authorization is meaningless outside of a connection to alienage their second description are you a protected person also tied directly to alienage both of those the problem is they are in essence a description of the protected class i think the analogy would be in bostock if you said that the employer is discriminating not against women but against lesbians and by the way lesbians don't exist among men therefore we can discriminate in that way that is an analysis rejected in the bostock case you can't define it at a level that is in essence a description of the protected class you've got to come up with as best you can if you can a description that cuts across both the protected class and those outside the protected class and ask are you treating folks in both classes the same with respect to that attribute here the only descriptions offered are in essence tied to whether or not you are an alien a non-citizen i have to just comment with respect to the second are you a protected person the only connection to employment relates then to discrimination prohibited under irka it's somewhat curious that they would at axon describe it that way because in essence they seem to be implicitly saying we would like to discriminate against all non-citizens but there's this law irka that says we cannot so the only way you will be free from our categorical preference for citizens is if you are protected under the law from discrimination by irka problem with that is they didn't incorporate section 1981 and irka and section 1981 are different though both prohibit discrimination against non-citizens irka sets up for a select class subgroup of non-citizens a streamlined process not as going through trial etc it's an administrative process you go through an administrative agency that investigates presents the case to an administrative law judge and by very strict timelines you end up with a resolution fairly quickly that was established specifically because of concerns about what irka itself through the employment the introduction of employment sanctions might mean in terms of discrimination it is not the full scope of who because of section 1981 in essence every way to describe it is in essence a description of the protected class itself inextricably tied to alienation thank you thank you counsel as y'all both well know uh we would love to come down and greet you and thank you for your argument we certainly appreciate uh you being with us and uh hope that we get a chance to see you in person before too long
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Henry F. Floyd